```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
                          EASTERN DIVISION
```

REGIONS BANK                                      PLAINTIFF/PETITIONER

VS.                                    CIVIL ACTION NO. 4:09CV61TSL-LRA

BRIAN BRITT and BRENDA BRITT                     DEFENDANTS/RESPONDENTS

### MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff Regions Bank to compel arbitration pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4. Defendants Brian Britt and Brenda Britt have filed an answer/response in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion to compel is well taken and should be granted as to Brenda Britt, but that the motion may not be granted at this time as to Brian Britt, as he has not been served with process.

The record establishes the following. On December 15, 2008, the Britts filed suit in the Circuit Court of Jackson County, Mississippi against Regions and its former Ocean Springs branch manager, Michael Jones. They subsequently amended their complaint to add as a defendant Christy Ryan, a financial services officer at Regions' Ocean Springs branch. In their lawsuit, the Britts demand recovery for injuries and damages suffered in connection

with certain loans from Regions. Specifically, they charge that Regions failed to remit property tax funds that were escrowed in connection with one loan transaction, and that Regions failed to timely release a lien or assignment on $18,000 that was being held as collateral for another loan after the loan was paid off.

According to Regions, a promissory note signed by Brenda Britt in connection with the first of these loans, a November 30, 2007 loan, and a deed of trust which she signed relative to the second loan on December 14, 2007, contained arbitration provisions which recited that the parties agreed to arbitrate "all disputes, claims or controversies between them, whether individual, joint or class in nature, arising from this [note/Deed of Trust] or otherwise, including without limitation contract and tort disputes." Regions maintains that the Britts' claims in the underlying action are covered by these arbitration provisions.

In addition, Regions notes that prior to the subject loans, both Brian and Brenda Britt had previously held accounts with Regions, in relation to which each had signed various documents by which they agreed to be bound by all the terms of Regions' Deposit Agreement, specifically including the arbitration and waiver of jury trial provisions therein, which broadly provide for arbitration of "any controversy, claim, counterclaim, dispute or disagreement between you and us, whether arising before or after

2

the effective date of this Agreement (any 'Claim')[,]" including any Claim

> arising out of, in connection with or relating to ... (5) any alleged contract or tort arising out of or relating in any way to the Agreement, any account, any transaction, any advertisement or solicitation, or your business, interaction or relationship with us; ... (7) any statements or representations made to you with respect to the Agreement, any account, any transaction, any advertisement or solicitation, or your business, interaction or relationship with us; or (8) any of the foregoing arising out of, in connection with or relating to any agreement which relates to the Agreement, any account, any transaction or your business, interaction or relationship with us."

Regions submits that the Britts' claims fall within these provisions.

Defendants have filed a combined answer and response to Regions' complaint and motion to compel arbitration, in which they raise numerous defenses and objections to this court's jurisdiction, and to arbitration, as follows:

> (1) the court lacks personal jurisdiction over Brian Britt since he has never been served with process;
>
> (2) the court lacks subject matter jurisdiction based on diversity because
>
>> (a) Christy Ryan and Michael Jones, both Mississippi residents, are necessary and indispensable parties whose joinder would destroy diversity;
>>
>> (b) Regions, while organized as an Alabama corporation and has its principal place of business in Alabama, is nevertheless also a citizen of Mississippi since it does business in Mississippi.
>
> (3) venue is not proper in the Eastern Division;

3

>    (4) the FAA is inapplicable since the subject
>    transactions did not involve interstate commerce;
>
>    (5) neither defendant signed any loan document or other
>    agreement on November 30, 2007;
>
>    (6) the arbitration agreement in the December 14 deed of
>    trust signed by Brenda Britt is unenforceable because:
>
>>        (a) "the December 14, 2007 note is wholly irrelevant
>>        and unenforceable as being moot since said note
>>        has been fully satisfied and any agreement whatsoever
>>        contained in said note has concluded and therefore is no
>>        longer valid as all contractual obligations and
>>        agreements by Britt have ended and no longer exist";
>>
>>        (b) the deed of trust is invalid because it encumbers
>>        marital property and yet was not also signed by Brian
>>        Britt;
>>
>>        ( c) the arbitration agreement in the deed of trust is
>>        "null and void as a false, fraudulent and/or invalid
>>        document which was never agreed to as alleged by the
>>        Plaintiff."
>
>    (7) none of defendants' prior accounts or account agreements
>    has any relevance to the present controversy.

The court addresses these arguments seriatim.

Turning first to Brian Britt's defense of lack of personal jurisdiction for the reason he has never been served with process, Regions acknowledges in its rebuttal brief that Brian Britt has not been served with process (though it asserts he has been evading process). It submits, however, that by his actions herein, Brian Britt has waived any objection to insufficiency of service of process or lack of personal jurisdiction. Regions notes it initiated this case by filing its complaint and that it filed a separate motion to compel arbitration. Thereafter,

4

defendants jointly filed a "Response to Complaint and Petition and Motion to Compel Arbitration." And Regions notes that while therein, Brian Britt purports to make a "limited appearance solely for the purpose of contesting jurisdiction in this cause," it contends that his response is not limited to his objection to the failure of service of process and consequent lack of personal jurisdiction but rather also includes his response and objections on the merits to Regions' motion to compel arbitration. For example, he argues that he cannot be compelled to arbitrate because he did not sign any written instruments on November 30 or December 14, 2007, and that any historical documents he may have signed relative to prior accounts have no relevance to the present controversy. In addition, he and Brenda request the imposition of sanctions against Regions for having to defend its frivolous action to compel arbitration.

Federal Rule of Civil Procedure 12(b) provides that jurisdictional defenses such as insufficiency of service of process are not "waived by being joined with one or more other defenses or objections in a responsive pleading or motion." This rule was adopted with the purpose and effect of abolishing the age-old distinction between a special and general appearance. Thus, it was unnecessary in this case for Brian Britt to make a "limited appearance" to raise his objections to process and jurisdiction. See Bayou Steel Corp. v. M/V Amstelvoorn, 809 F.2d

1147, 1149 n.6 (5th Cir. 1987) (noting that "Rule 12 has abolished for the federal courts the age-old distinction between general and special appearances. A defendant need no longer appear specially to attack the court's jurisdiction over him.") (quoting Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871 (3d Cir. 1944); 5B C. Wright and A. Miller, Federal Practice and Procedure § 1344, at 30 (3d ed. 2004) ("[T]echnical distinctions between general and special appearances have been abolished and ... no end is accomplished by retaining the terms in federal practice."). Indeed, the adoption of this rule "abrogated the long-standing waiver rule by permitting a defendant to seek affirmative relief without forfeiting an objection to jurisdiction." Ellibee v. Leonard, 226 Fed. Appx. 351, 357, 2007 WL 837092, 6 (5th Cir. 2007) (quoting Bayou Steel Corp. v. M/V Amstelvoorn, 809 F.2d 1147, 1148 (5th Cir. 1987)).

Of course, a party can still waive objections to service of process and personal jurisdiction, and does so by failing to assert such defenses at the first opportunity for doing so. See Fed. R. Civ. Proc. 12(h) ("(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule

15(a) to be made as a matter of course."); see also Flory v. U.S., 79 F.3d 24, 25 (5th Cir. 1996) ("The purpose of the Rule 12(h)(1) automatic waiver provision is to encourage the consolidation of motions and discourage the dilatory device of making them in a series.") (citation omitted). Thus, Rule 12 requires that these defenses be made in a responsive pleading or in the defendant's first Rule 12 motion to dismiss, failing which they are waived. Here, Brian Britt clearly raised his service of process defense at the first opportunity for doing so.

Still, "under the case law, some defendants have been found to have waived the jurisdictional defense, despite nominally preserving it in an answer, if the defendant substantially participates in the litigation without actively pursuing the defense." US LED, Ltd. v. Nu Power Associates, Inc., Civil Action No. H-07-0783, 2008 WL 4838851, 2 (S.D. Tex. Nov. 5, 2008) (citing Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc., 104 Fed. Appx. 376, 379-80 (5th Cir. 2004) (noting holdings by other circuits that "a defendant may waive a properly-pleaded personal jurisdiction defense by failing to pursue the defense after including it in an answer"), and PaineWebber Inc. v. Chase Manhattan Private Bk. (Switzerland), 260 F.3d 453, 459 (5th Cir. 2001)(acknowledging "well-established rule that parties who choose to litigate actively on the merits thereby surrender any jurisdictional objections")).

The determination of whether there has been a waiver in such cases generally depends on the amount of time that has elapsed before the defendant affirmatively pursues his defense and whether defendant's active litigation of the case amounts to implicit consent to the court's jurisdiction. See US LED, Ltd., 2008 WL 4838851, at 2. In this case, there is no basis on which it might reasonably be argued that Brian Britt waived his objections to insufficiency of service of process and consequent lack of personal jurisdiction. He promptly and properly raised the defense in his answer/response, and though other merits-based defenses are also asserted therein, the rules specifically permit him to assert such defenses without waiving his objection to jurisdiction and/or process. And he certainly did not "actively litigate" the case in a manner that implicitly concedes jurisdiction solely by virtue of asserting defenses to arbitration, where such defenses were asserted in the very same answer/response in which he made it abundantly clear that he was challenging the court's jurisdiction over him. Cf. Flory, 79 F.3d at 26 (holding that "just because the Government chose to pursue a dismissal on the merits prior to pursuing a jurisdictional defense, that does not mean that the Government waived its jurisdictional defense under Rule 12(h)(1)").

For these reasons, the court concludes that Brian Britt has properly raised, and has not waived, his objections to

8

insufficiency of service of process and personal jurisdiction. And, since Regions has conceded that Brian Britt has not been served with process, then the court concludes that the motion to compel arbitration may not be granted as to this defendant at this time. The court therefore will proceed to consider the motion to compel arbitration only as it pertains to Brenda Britt. As to Brian Britt, however, the court does note that Regions' complaint was filed only approximately six weeks ago, on May 5, and that Regions therefore has ample time left within which to timely effect service of process on Brian Britt before he could validly seek or secure dismissal on account of Regions' failure to serve process. See Rule 4(m)(authorizing dismissal "[i]f a defendant is not served within 120 days after the complaint is filed").[1] Once service of process is made on Brian Britt, Regions may renew its motion to compel arbitration as to this defendant.

On the issue of subject matter jurisdiction, the court rejects Brenda Britt's argument that diversity jurisdiction is lacking. First, while Regions obviously does substantial business in Mississippi, that fact does not make it a citizen of Mississippi for purposes of diversity jurisdiction. Rather, the

---

[1] The court also acknowledges Regions' assertion that it was unable to serve Brian Britt initially only because he evaded process. If that is the case, and continues to be the case, then Regions will be afforded such opportunity as it reasonably requires in order to accomplish service on Brian Britt. See Fed. R. Civ. Proc. 4(m) (mandating extension of time to serve process where good cause is shown).

9

law is clear that a corporation "is not deemed a citizen of every State in which it conducts business or is otherwise amenable to personal jurisdiction," and that instead, "a corporation's citizenship derives, for diversity jurisdiction purposes, from its State of incorporation and principal place of business." Wachovia Bank v. Schmidt, 546 U.S. 303, 318, 126 S. Ct. 941, 952, 163 L. Ed. 2d 797 (2006) (citing 28 U.S.C. § 1332(c)(1)).

As for Brenda Britt's further argument that the court lacks jurisdiction for the reason that Regions' employees Michael Jones and Christy Ryan are necessary and indispensable parties whose joinder would destroy diversity, this court has addressed this identical argument in at least two other cases involving a complaint by Regions' predecessor, AmSouth Bank, to compel arbitration of claims asserted against both it and one of its employees. See AmSouth Bank v. Bowens, 351 F. Supp. 2d 571, 572 (S.D. Miss. 2005); AmSouth Bank v. Stewart, Civil Action No. 3:03CV1180, 2004 WL 914638 (S.D. Miss. Apr. 27, 2004); see also Snap-On Tools, Inc. v. Mason, 18 F.3d 1261, 1264 (5th Cir. 1994) (holding that the fact that employee defendants who fell within the scope of an arbitration agreement were party defendants in the underlying state court litigation did not render them indispensable parties in a federal action to compel arbitration brought under the Federal Arbitration Act, nor did the absence of such parties from the federal court action require the federal

court to abstain under the principles of abstention enunciated in Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976)).

The Britts' assertion that venue is not proper in the Eastern Division is incorrect since the FAA does not provide for divisional venue, only "district" venue. See 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."). It is curious that Regions would file this action in the Eastern Division, which has no apparent connection to the parties or the present controversy. However, the Britts have not requested a transfer of venue.

Brenda Britt argues that this court lacks jurisdiction to grant Regions' request for arbitration under the FAA on the basis that the subject transactions were not "interstate transactions" but rather "simply involved things that happened solely within the state of Mississippi." The FAA provides that a

> written provision in ... a contract evidencing a
> transaction involving commerce to settle by arbitration
> a controversy thereafter arising out of such contract or
> transaction, or the refusal to perform the whole or any

11

> part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). Contrary to Britt's suggestion, the reach of the FAA is not limited to transactions "in commerce." Instead, the Supreme Court has interpreted the term "involving commerce" in the FAA "as the functional equivalent of the more familiar term 'affecting commerce'–words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power[,]" Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56–58, 123 S. Ct. 2037, 2040, 156 L. Ed. 2d 46 (2003), and thus held that "[b]ecause the statute provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause,' it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'–that is, 'within the flow of interstate commerce,'" id. (citations omitted). Thus, in Alafabco, the Court found that the required nexus was present notwithstanding the absence of proof that any "portion of the restructured debt was actually attributable to interstate transactions" or that the loans "originated out-of-state" or that "the restructured debt was inseparable from any out-of-state projects." Id. Here, however, Regions has provided two declarations from Kimberly Townsley, its records custodian, which establish that the subject loan transactions

12

involved both electronic communications and funds crossing state lines.  This is clearly a sufficient nexus with interstate commerce.  Even if that were not so, however, the court in Alafabco further explained that "application of the FAA [is not] defeated because the individual debt-restructuring transactions, taken alone, did not have a 'substantial effect on interstate commerce,'" id. at 56, 123 S. Ct. at 2040 (citations omitted), because "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice ... subject to federal control.'" Id. at 56-57, 123 S. Ct. at 2040 (citations omitted).  "Only that general practice need bear on interstate commerce in a substantial way." Id. at 57, 123 S. Ct. at 2040 (citation omitted).  And the Court expressly recognized the impact commercial lending has on the national economy. Id. at 58, 123 S. Ct. at 2041 ("No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause.").  The required nexus to interstate commerce is clearly satisfied.

Brenda Britt does not deny that she signed various agreements at various times which contained arbitration agreements.  She apparently contends, however, that the only putative arbitration

13

agreement that is even arguably relevant to the claims in the underlying litigation is the deed of trust executed on December 14, 2007; and she maintains that the December 14 deed of trust is itself unenforceable because it was not also signed by her husband, and she further asserts that the arbitration agreement contained in that deed of trust is unenforceable for various reasons.

Throughout her answer/response, Brenda Britt repeatedly states that she did not sign any loan documents on November 30, 2007, and that instead, her loan transactions with Regions were closed on December 14, 2007. In support of its motion, however, Regions has presented a declaration from records custodian Kimberly Townsley accompanied by a promissory note and a loan agreement bearing Brenda Britt's signature, both of which are dated November 30, 2007. Apparently, Brenda Britt does not deny that she signed both documents, and she certainly has offered no evidence that she did not sign them. Instead, she evidently claims only that she signed these documents on December 14, 2007, and not on November 30, 2007, the date reflected on the documents; yet she has offered no evidence of this assertion, either. Regardless of when the documents were signed, the unchallenged record evidence reflects that they were signed by Brenda Britt in connection with a loan transaction with Regions that is a subject of her underlying complaint against Regions. The arbitration

14

provisions in those agreements reflect the parties' agreement to arbitrate "all disputes, claims or controversies between them, whether individual, joint or class in nature, arising from this [note/Deed of Trust] or otherwise, including without limitation contract and tort disputes." Other than to deny (without supporting proof) that these documents were signed on November 30, 2007, Brenda Britt has suggested no basis on which she might be relieved of her obligation to arbitrate under this provision.

As for the December 14, 2007 deed of trust, which is also a subject of her underlying lawsuit, the Supreme Court's decision in <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967), forecloses Brenda Britt's argument that the arbitration agreement is unenforceable because the deed of trust itself is void and unenforceable in its entirety since it purports to encumber marital property without her husband's consent. It also would seem to bar her vague assertion that the arbitration agreement is "null and void as a false, fraudulent and/or invalid document which was never agreed to as alleged by the Plaintiff."[2] As Regions correctly notes, under

---

[2] This argument is so general and vague as to be no argument at all, and it certainly is not supported by any proof to overcome the fact that Brenda Britt signed the agreement containing an arbitration provision, which she is presumed to have read and understood. See <u>New South Federal Sav. Bank v. Anding</u>, 414 F. Supp. 2d 636, 651 (S.D. Miss. 2005) (recognizing that Mississippi law imposes legal obligation on contracting party to read contract before signing, and holding that defendants who signed deed of trust rider were "presumed to have read and

Prima Paint, a court may not invalidate arbitration provisions on any basis that provides a potential defense to the contract as a whole. Id.; see Will-Drill Resources, Inc. v. Samson Resources, Inc., 352 F.3d 211, 215 (5th Cir. 2003) (holding that "[u]nless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute").

Brenda Britt's further argument that the December 14, 2007 arbitration agreement is "wholly irrelevant and unenforceable as being moot" since the underlying loan has been paid off, is without merit. Nothing in the arbitration provision suggests that the obligation to arbitrate disputes or controversies relating to the loan would expire upon payoff, and inasmuch as the claims in the underlying action arise under the subject contract, then the arbitration obligation survives by operation of law. See Litton Financial Printing v. N.L.R.B., 501 U.S. 190, 111 S. Ct. 2215, 2225, 115 L. Ed. 2d 177 (1991) (holding that "if a dispute arises under the contract ... in question, it is subject to arbitration even in the post contract period").

---

understood that their common law claims relating to their loans would be subject to arbitration"). Thus, even if this argument were directed only at the arbitration provision of the agreement rather than the agreement as a whole so that it was not barred by Prima Paint, it still would not relieve Brenda Britt of her agreement to arbitrate.

16

In summary, it is manifest that the claims in the Britts' underlying lawsuit against Regions and its employees Christy Ryan and Michael Jones arise out of and/or relate to the various loan transactions in connection with which Brenda Britt executed documents containing broad arbitration provisions.[3] And, it is further manifest that Brenda Britt has offered no valid basis for relieving her of her agreement to arbitrate her claims against Regions. Moreover, it is also apparent that she is bound to arbitrate her claims against Regions' employees Christy Ryan and Michael Jones, as she has made allegations of interdependent misconduct between Regions, Christy Ryan and Michael Jones. See Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524, 527 (5th Cir. 2000)("application of equitable estoppel is warranted when the signatory to the contract containing an arbitration

---

[3] Regions has also sought to compel arbitration based on Brenda Britt's numerous other accounts with Regions and/or its predecessors which contained arbitration agreements. In her response, Brenda Britt dismisses these other accounts, many or all of which are still open and current, as "having no relevance whatsoever" to the present controversy. Regions points out, though, that the arbitration agreement set forth in the Deposit Agreement which governs these other accounts broadly provides for arbitration of "any dispute" "arising before or after the effective date of this Agreement" and arising out of or relating to "any account, any transaction, ... or your business, interaction or relationship with us." Such broad language would seem to extend to Brenda Britt's claims in the underlying lawsuit. However, the court need not definitively resolve the parties' dispute on this issue as the arbitration agreements in the loan documents signed by Brenda Britt are more pertinent to and do clearly cover the underlying controversy.

clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract").

Based on the foregoing, it is ordered that the motion to compel arbitration as to Brenda Britt's claims is granted, and that the motion to compel arbitration as to Brian Britt is denied. It is further ordered that Brenda Britt's claims in the underlying action against Regions, Jones and Ryan are stayed and enjoined pending arbitration.

SO ORDERED this 23rd day of June, 2009.

/s/ Tom S. Lee  
UNITED STATES DISTRICT JUDGE